IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRCT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DEVONTE DEES, | ) CASE NO. 1:19-CV-01114 |
| Plaintiff, | ) |
| vs. | ) MAGISTRATE JUDGE |
| | ) JONATHAN D. GREENBERG |
| SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) **MEMORANDUM OF OPINION AND** |
| | ) **ORDER** |

Plaintiff Devonte Dees ("Plaintiff" or "Dees") challenges the final decision of Defendant Andrew Saul,[1] Commissioner of Social Security ("Commissioner"), denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1381 *et seq.* ("Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and the consent of the parties, pursuant to 28 U.S.C. § 636(c)(2). For the reasons set forth below, the Commissioner's final decision is VACATED AND REMANDED for further consideration consistent with this opinion.

## I. PROCEDURAL HISTORY

In September 2013, Dees filed an application for SSI alleging a disability onset date of September 1, 2000[2] and claiming he was disabled due to a learning disability, inability to comprehend things, difficulty

---

[1] On June 17, 2019, Andrew Saul became the Commissioner of Social Security.
[2] The Social Security Administration ("SSA") found Dees disabled as of June 1, 2002. (Transcript ("Tr.") at 46.) At age 18, he underwent a redetermination and SSA found Dees was not disabled. (*Id.*) Dees did not appeal the termination of benefits effective March 21, 2013. (*Id.* at 216.)

1

reading, and bipolar disorder. (Transcript ("Tr.") at 111-16, 132.) The application was denied initially and upon reconsideration, and on February 21, 2014 he requested a hearing before an administrative law judge ("ALJ"). (*Id.* at 88.)

On July 22, 2015, an ALJ held a hearing, during which Dees, represented by counsel, and an impartial vocational expert ("VE") testified. (*Id.* at 23-45.) On July 28, 2015, the ALJ issued a written decision finding Plaintiff was not disabled. (*Id.* at 11-19.) The ALJ's decision became final on August 1, 2016, when the Appeals Council declined further review. (*Id.* at 1-5.)

On September 27, 2016, Dees filed a complaint challenging the Commissioner's final decision. (*Id.* at 266.) On April 17, 2017, the Court granted the parties' Joint Motion for Remand. (*Id.* at 284-88.) On August 28, 2017, the Appeals Council issued a Notice of Order remanding the case back to the ALJ. (*Id.* at 292-96.)

The ALJ held a supplemental hearing on March 20, 2018, during which Dees, represented by counsel, and a VE testified. (*Id.* at 233-45.) On June 11, 2018, the ALJ issued a written decision finding Dees was not disabled. (*Id.* at 216-28.) The ALJ's decision became final on April 5, 2019, when the Appeals Council denied review. (*Id.* at 200-07.)

On May 17, 2019, Dees filed his Complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 14, 16, 17.) Dees asserts the following assignment of error:

(1) Whether the ALJ's decision is supported by substantial evidence when the residual functional capacity finding does not include specific limitations assessed by the consultative examiner, Dr. Faust.

2

(Doc. No. 14 at 1.)

## II. EVIDENCE

**A. Personal and Vocational Evidence**

Dees was born in August 1993 and was 24 years old at the time of his most recent administrative hearing (Tr. 226, 233), making him a "younger" person under Social Security regulations. *See* 20 C.F.R. § 416.963(c). He has a limited education and is able to communicate in English. (Tr. 226.) He has no past relevant work. (*Id.*)

**B. Relevant Medical Evidence[3]**

On February 20, 2013, Michael Faust, Ph.D., conducted a consultative psychological evaluation of Dees. (*Id.* at 188-96.) Dees reported he was living with his mother and siblings in his mother's house and had always resided with her. (*Id.* at 189.) Dees stated despite being placed in specialized education classes in school because he had difficulty with learning and comprehension, he continued to receive poor grades. (*Id.*) He dropped out of high school after completing the tenth grade. (*Id.*)

Dr. Faust noted Dees put forth "consistently good effort" on all tasks during testing. (*Id.* at 190.) Dees was polite and cooperative, exhibited good attention throughout the examination with no evidence of any attention deficits, and demonstrated an adequate memory. (*Id.*) Dees did not exhibit any significant speech articulation problems. (*Id.* at 191.) Dr. Faust found Dees' thinking was rather concrete and simplistic but remained logical and linear. (*Id.*) He understood simple questions and instructions but struggled to

---

[3] The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' Briefs.

follow multistep or complex instructions. (*Id.*) Dees appeared happy, with no outward signs of depression, and was not anxious. (*Id.*) But he appeared unsure of himself and was overwhelmed by difficult tests. (*Id.*) Dr. Faust found Dees' ability to abstract was significantly below the mean. (*Id.* at 191-92.) Dees was unable to complete serial sevens or threes because he did not fully understand the nature of the task – he counted forward. (*Id.* at 192.) Dr. Faust noted Dees appeared dependent on others for guidance and was not seen as possessing sufficient judgment to seek medical care if needed without assistance from his mother. (*Id.*) Dees' mother helped him handle money as he had difficulty counting money. (*Id.*) Dees showed limited social judgment, which Dr. Faust found consistent with low IQ. (*Id.*)

Dees achieved a full-scale IQ of 72 on the WAIS-IV, and Dr. Faust determined his score appeared valid. (*Id.* at 192-93.) Dees' score placed him in the borderline range of intellectual functioning. (*Id.* at 193.) Dr. Faust diagnosed Dees with Borderline Intellectual Functioning. (*Id.*)

When discussing Dees' ability to perform work-related activities, Dr. Faust opined Dees "would experience difficulty understanding how to perform and carry out complex tasks, and would require a great deal of supervision and structure to complete job duties accurately due to limited intellectual capacity." (*Id.* at 194.) While his work pace was slow, his persistence fell within normal limits. (*Id.*) Dr. Faust determined Dees would be capable of responding appropriately to coworkers and supervisors as long as instructions and job demands were presented to him in simple terms. (*Id.*) Dr. Faust further opined Dees' "limited cognitive capacity causes him limited insight and judgment such that he would likely have difficulty fully processing work pressure and he may become confused and overwhelmed when under pressure." (*Id.* at 194- 95.)

On October 24, 2013, J. Joseph Konieczny, Ph.D., conducted a consultative psychological evaluation of Dees. (*Id.* at 180-84.) Dees reported he had dropped out of school in his second year of ninth grade;

although he was in "special ed slowing learning" classes, he still found it too difficult. (*Id.* at 181.) Dees also told Dr. Konieczny he had difficulty controlling his temper and experienced episodes of mood swings. (*Id.*) Dees' daily activities included watching television, taking care of his daughter, playing video games, going to church, cleaning, household chores, and spending time with his girlfriend. (*Id.* at 182.) Dees also shopped and managed his own finances. (*Id.*)

Dr. Konieczny found Dees' ability to concentrate and attend to tasks were not impaired. (*Id.* at 182.) Dees completed serial threes without error, although his responses were slow. (*Id.*) He showed moderate deficits in his ability to perform logical abstract reasoning and did not provide interpretations for two sayings. (*Id.*) Dr. Konieczny determined Dees showed mild deficits in his awareness of rules of social judgment and conformity and his overall level of judgment. (*Id.*) Dr. Konieczny opined Dees appeared to require a slight degree of supervision and monitoring in the management of his daily activities and handling financial affairs. (*Id.*)

Dees achieved a full-scale IQ of 63 on the WAIS-IV, which is the extremely low range of intellectual functioning for individuals Dees' age. (*Id.* at 182-83.) Dr. Konieczny noted Dees' performance on all of the subtests were "quite uniform." (*Id.* at 183.) While this intellectual testing placed Dees in the "mild mental retardation range," Dr. Konieczny opined Dees' capabilities in some areas of intellectual functioning and presentation would suggest an individual with a higher level of functioning, making a diagnosis of Borderline Intellectual Functioning more appropriate. (*Id.*) Dr. Konieczny also diagnosed Dees with Adjustment Disorder with Disturbance of Conduct, Chronic. (*Id.*)

When discussing Dees' ability to perform work-related activities, Dr. Konieczny opined Dees would have mild to moderate limitations in his ability to understand, remember, and carry out instructions. (*Id.*)

5

Dr. Konieczny further opined Dees would have diminished tolerance for frustration and diminished coping skills, which would impact his ability to respond to typical supervision and interpersonal work situations, as well as his ability to respond to typical pressure situations in a work setting. (*Id.*)

On June 24, 2015, Dees attended an initial session with Valerie Coats, M.D., regarding his complaints of depression. (*Id.* at 197.) Dees presented with anxious/fearful thoughts, depressed mood, difficulties with sleep, diminished interest or pleasure, excessive worry, loss of appetite, racing thoughts, restlessness, and thoughts of death or suicide. (*Id.*) Dr. Coats diagnosed Dees with depression and prescribed amitriptyline and Zoloft. (*Id.* at 199.)

On November 3, 2017, Dees saw Dr. Coats for a follow-up visit regarding his depression. (*Id.* at 385.) Dees presented with anxious/fearful thoughts, depressed mood, difficulty staying asleep, fatigue, loss of appetite, racing thoughts, and restlessness, but denied difficulty falling asleep and thoughts of death or suicide. (*Id.*) Social interaction aggravated Dees' depression, while isolation relieved it. (*Id.*) On examination, Dr. Coats found Dees exhibited inappropriate mood and affect, constricted affect, poor insight, and poor judgment. (*Id.* at 388.) Dr. Coats determined Dees was suffering from Major Depressive Disorder, single episode, unspecified. (*Id.* at 389.)

## C.   State Agency Reports[4]

On November 8, 2013, state agency consultant Irma Johnston, Psy.D., reviewed Dr. Konieczny's report[5] and found Dees' borderline intellectual functioning and affective disorder to be severe impairments.

---

[4] The Court only addresses Dees' mental limitations and impairments as Dees does not challenge any of the physical findings made by SSA.

[5] It appears Dr. Faust's opinion was not part of the materials the state agency psychiatrists reviewed. (Tr. 49-58, 60-70.)

(*Id.* at 49-50, 52-53.) Dr. Johnston opined Dees had mild restriction of activities of daily living and moderate difficulties in maintaining social functioning and maintaining concentration, persistence, or pace. (*Id.* at 52-53.) Dr. Johnston further opined Dees was capable of understanding and recalling simple, repetitive tasks and would work best in a static work setting where there were no demands for a fast pace and where interaction with others was superficial and infrequent. (*Id.* at 54-55.) Further, changes in work duties should be infrequent and easily explained. (*Id.* at 56.)

On January 28, 2014, state agency consultant Katherine Fernandez, Psy.D., affirmed Dr. Johnson's findings on reconsideration. (*Id.* at 64, 66-68.)

## D. Hearing Testimony

During the March 20, 2018 hearing, Dees testified to the following:

- There had been no change in his condition since his hearing in July 2015. (Tr. 236-37.)

- His difficulties in reading and writing have not improved. (*Id.* at 237.) He can only read some words in a newspaper. (*Id.*) He cannot fill out a job application on his own. (*Id.*)

- He can add and subtract, but if he went to the store alone, he would be unable to know whether he got the correct change; he would just trust the cashier. (*Id.*)

- He would have a hard time following directions in a work setting because he gets distracted. (*Id.*) He also has a hard time understanding things sometimes. (*Id.* at 237-38.) In addition, he has problems being around people; he doesn't feel comfortable around them. (*Id.* at 238.) He gets quiet when he is around other people. (*Id.* at 239.)

- He has never lived on his own and currently lives with his girlfriend. (*Id.* at 238.) She handles the finances, the cooking, and grocery shopping. (*Id.*) He could microwave food on his own. (*Id.*) He cannot grocery shop alone, as the only thing he would get is "microwave food." (*Id.*)

7

The ALJ found Dees had no past work. (*Id.* at 240.) The ALJ then posed the following hypothetical question:

> I would like you to assume an individual who is 24 years old, soon to be 25. Has a ninth-grade limited education. Can read and write only very simple English, perform very simple arithmetic. This individual does not have exertional limitations. Non-exertionally he can perform simple routine tasks in a low-stress environment.
>
> Specifically, no fast pace strict quotas or frequent duty changes involving superficial interpersonal interactions with coworkers and supervisors. Specifically, no arbitration, negotiation or confrontation. And no more than very simple reading, writing or mathematics as a job requirement. And no interaction with the general public as a job requirement. Are there jobs existing in significant numbers in the economy that this individual could perform?

(*Id.*)

The VE testified the hypothetical individual would be able to perform other representative jobs in the economy, such as: dishwasher; industrial sweeper, cleaner; merchandise marker; and motel cleaner. (*Id.* at 241.)

The ALJ then added the following limitation to the first hypothetical: due to symptoms of medically determinable impairments, the hypothetical individual would be off task at least 20% of the time. (*Id.* at 242.) The VE testified there would be no work for this individual. (*Id.*)

Dees' attorney then asked the VE: "If you added into the first hypothetical that the individual would require a great deal of supervision and structure to complete the job duties accurately, how would that affect your answer?" (*Id.*) The VE asked what a great deal of supervision would be, and the ALJ ordered counsel to pose his question in vocational terms. (*Id.* at 242-43.) Counsel clarified it would be

8

consistent with a job coach.  (*Id.* at 243.)  The VE testified that a job coach typically is inconsistent with competitive work.  (*Id.*)

### III.     STANDARD FOR DISABILITY

A disabled claimant may be entitled to receive SSI benefits.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must meet certain income and resource limitations.  20 C.F.R. §§ 416.1100, 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. § 416.920(a)(4).  *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application.  20 C.F.R. § 416.920(b).  Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. § 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience.  *See* 20 C.F.R. § 416.920(d).  Fourth, if the claimant's impairment or combination of impairments does not prevent him from doing his past relevant work, the claimant is not disabled.  20 C.F.R. § 416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. § 416.920(g).

## IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since August 11, 2013, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: adjustment disorder with depression and history of conduct disturbance, and borderline intellectual functioning (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (20 CFR 416.945) to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform simple, routine tasks in a low stress environment (no fast pace, strict quotas, or frequent duty changes) involving superficial interpersonal interactions with coworkers and supervisors (no arbitration, negotiation, or confrontation), no more than very simple reading, writing or mathematics as a job requirement, and no interaction with the general public as a job requirement (20 CFR 416.969a).

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on August \*\*, 1993 and was 19 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFr 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined the Social Security Act, since August 11, 2013, the date the application was filed (20 CFR 416.920(g)).

(Tr. 218-28.)

## V. STANDARD OF REVIEW

"The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy*, 594 F.3d at 512; *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the

evidence could reasonably support the conclusion reached.") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White*, 572 F.3d at 281; *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-cv-734, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-1982, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. ANALYSIS

Dees argues that despite giving Dr. Faust's opinion great weight, the ALJ failed to incorporate the limitation opined by Dr. Faust that Dees would require a "great deal of supervision and structure to

complete job duties accurately." (Doc. No 14 at 11.) Dees asserts this is a "significant omission," as "[d]uring both hearings, the [VEs] were presented with this precise limitation" and "[e]ach time, the [VE] was unable to identify jobs for such an individual." (*Id.*) Dees maintains the ALJ's "failure to include Mr. Dees [sic] need for a great deal of supervision and structure in the [RFC] finding renders the ALJ's decision unsupported with [sic] substantial evidence." (*Id.* at 12.)

The Commissioner responds that the ALJ was not required to incorporate every limitation "opined by a one-time examining psychologist because the ALJ afforded great weight to the psychologist's opinions." (Doc. No. 16 at 1.) Further, the Commissioner asserts "the ALJ was presented with conflicting medical opinions – neither the reviewing psychologists not Dr. Konieczny found that Plaintiff required a great deal of supervision on the job while Dr. Faust did – and reasonably determined based on the medical evidence and activities of daily [sic] set forth above that Plaintiff did not require enhanced supervision." (*Id.* at 9.)

The RFC determination sets out an individual's work-related abilities despite his or her limitations. *See* 20 C.F.R. § 404.1545(a). A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner. *See* 20 C.F.R.§ 404.1527(d)(2).[6] An ALJ "will not give any special significance to the source of an opinion on issues reserved to the Commissioner." *See* 20 C.F.R.§ 404.1527(d)(3). As such, the ALJ bears the responsibility for assessing a claimant's RFC based on all the relevant evidence, 20 C.F.R. § 404.1546(c), and must consider all of a claimant's medically determinable impairments, both individually and in combination. *See* SSR 96–8p, 1996 WL 374184 (SSA July 2, 1996).

---

[6] This regulation has been superseded for claims filed on or after March 27, 2017. As Dees' application was filed in September 2013, this Court applies the rules and regulations in effect at that time.

13

The ALJ is obligated to consider the record as a whole. *Hurst v. Secy'y of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985). "In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Fleischer*, 774 F. Supp. 2d at 880 (citing *Bryan v. Comm'r of Soc. Sec.*, 383 Fed. Appx. 140, 148 (3d Cir. 2010) ("The ALJ has an obligation to 'consider all evidence before him' when he 'mak[es] a residual functional capacity determination,' and must also 'mention or refute [...] contradictory, objective medical evidence' presented to him.")). "'[W]here the opinion of a medical source contradicts his RFC finding, an ALJ must explain why he did not include its limitations in his determination of a claimant's RFC.'" *Davidson v. Comm'r of Soc. Sec.*, No. 3:16CV2794, 2018 WL 1453472, at *2 (N.D. Ohio Mar. 23, 2018) (quoting *Moscorelli v. Colvin*, No. 1:15-cv-1509, 2016 WL 4486851, at *3 (N.D. Ohio Aug. 26, 2016)) (citing SSR 96-8p, 1996 WL 374184, at *7); *Cooper v. Comm'r of Soc. Sec.*, No. 2:18-cv-67, 2018 WL 6287996, at *5 (S.D. Ohio Dec. 3, 2018) ("[W]here, as here, the ALJ assigns significant weight to a particular opinion and states it is consistent with the record, he must incorporate the opined limitations or provide an explanation for declining to do so.") (citations omitted), *report and recommendation adopted by* 2019 WL 95496 (S.D. Ohio Jan. 3, 2019). *See also* SSR 96–8p at *7, 1996 WL 374184 (SSA July 2, 1996) ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). While the RFC is for the ALJ to determine, it is well established that the claimant bears the burden of establishing the impairments that determine his RFC. *See Her*, 203 F.3d at 391.

An ALJ must provide a discussion at each step "in a manner that permits meaningful review of the decision." *Boose v. Comm'r of Soc. Sec.*, No. 3:16cv2368, 2017 WL 3405700, at *7 (N.D. Ohio June 30, 2017) (quoting *Snyder v. Comm'r of Soc. Sec.*, No. 5:13cv2360, 2014 WL 6687227, at *10 (N.D. Ohio Nov. 26, 2014). This discussion must "build an accurate and logical bridge between the evidence" and the ALJ's conclusion. *Snyder*, 2014 WL 6687227, at *10 (quoting *Woodall v. Colvin*, No. 5:12 CV 1818, 2013 WL 4710516, at *10 (N.D. Ohio Aug. 29, 2013)).

The ALJ's analysis included the following discussion of the opinion evidence in this case:

> As for the opinion evidence, the undersigned considered the opinions of the State agency consultants (Ex. 3A, 5A). The State agency psychological consultant at the initial level, Irma Johnston, Psy.D., and at the reconsideration level, Katherine Fernandez, Psy.D., provided a mental residual functional capacity assessment (Ex. 3A/7-9, 5A/7-9). They opined that the claimant is capable of understanding and recalling simple, routine tasks and would work best in a static work setting where there is no demand for a fast pace. The claimant would also work best in a setting where interaction with others is superficial and infrequent and changes in work duties should be infrequent and easily explained.
>
> The undersigned gives the opinions of the State agency psychological consultants great weight because they are consistent with examinations that indicated inappropriate mood and behavior and poor insight and judgment at times but remained oriented with sufficient fund of knowledge and language, normal attention span and concentration, and no anxiety or agitation (Ex. 3F/2, 4F/2, 7, 5F/3, 8, 13). The undersigned also finds that these opinions are consistent with intellectual functioning test scores that reflect borderline intellectual functioning (Ex. 2F/7). In addition, the undersigned finds that these opinions are supported by the claimant's ability to manage his daily activities independently, care for his minor daughter, cook, perform household chores, shop, manage finances, watch television, and use the computer (Ex. 5E/1, 1F/4, 2F/6).
>
> The undersigned also considered the opinion of Michael Faust, Ph.D., based on a psychological consultative evaluation conducted on February 20, 2013 (Ex. 2F). Dr. Faust noted that the claimant was not seeking mental health treatment

15

at the time he conducted the evaluation (Ex. 2F/8). He also noted a diagnosis of borderline intellectual functioning and provided a Global Assessment of Functioning (GAF) score of 60, indicating moderate symptoms (Ex. 2F/7). Dr. Faust further opined that the claimant would experience difficulty understanding how to perform and carry out complex tasks and *would require a great deal of supervision and structure to complete job duties accurately due to limited intellectual capacity* (Ex. 2F/8). He showed limited attention and concentration and slow work pace but persistence within normal limits. The claimant is able to respond appropriately to supervision and to coworkers in a work setting as long as instructions and job demands are presented in simple terms. He would likely have difficulty fully processing work pressure and may become confused and overwhelmed when under pressure (Ex. 2F/8-9). Dr. Faust also opined that the claimant does not appear to have the mental ability to manage his funds (Ex. 2F/9).

*The undersigned gives Dr. Faust's opinion great weight because it is consistent with the record as a whole*. The undersigned finds that examinations that indicated the claimant at times showed depressed mood, poor insight and judgment, and reported exacerbating factors that included conflict and stress support Dr. Faust's opinion (Ex. 3F/1-2, 4F/1-2, 5F/8). The undersigned also finds that Dr. Faust's opinion is supported by examinations that demonstrated despite his impairments the claimant presented as oriented with sufficient fund of knowledge and language, normal attention span and concentration, and no hallucinations, increased activity, mood swings, agitation, or anxiety. Further, the undersigned finds that the claimant's ability to maintain activities of daily living independently, take care of his minor daughter, and participate in recreational activities also support Dr. Faust's opinion (Ex. 5E/1, 1F/4, 2F/6). *However, the undersigned notes that Dr. Faust's opinion regarding the claimant's inability to manage his own funds is inconsistent with subsequent evidence that indicated he manages his own finances and performs shopping tasks independently* (Ex. 5E/1, 1F/4).

In addition, the undersigned considered the opinion of J. Joseph Konieczny, Ph.D., based on a psychological consultative evaluation conducted on October 24, 2013 (Ex. 1F). He noted diagnoses of adjustment disorder with disturbance of conduct and borderline intellectual functioning and provided a Global Assessment of Functioning (GAF) score of 48, indicating serious symptoms (Ex. 1F/5). Dr. Konieczny further opined that the claimant would show some mild to moderate limitations in his ability to understand, remember, and carry out instructions. He showed no significant limitation in attention and concentration and persistence in single and multi-step tasks. The claimant

would have some diminished tolerance for frustration and diminished coping skills, which would impact his ability to respond to typical supervision and interpersonal situations and to typical pressure situations in the work setting. Dr. Konieczny also opined that the claimant would be able to manage benefits in his own best interest if granted.

The undersigned gives Dr. Konieczny's opinion great weight to the extent it supports the mental residual functional capacity set forth in this decision. The undersigned finds that Dr. Konieczny's opinion regarding diminished tolerance for frustration, coping skills, and ability to respond to work pressures is consistent with the record that referenced depressed mood, poor insight and judgment, and exacerbating factors of conflict, stress, and lack of sleep (Ex. 3F/1-2, 4F/1-2, 5F/8). The undersigned also finds that Dr. Konieczny's opinion regarding the claimant's ability to understand, remember, carry out and maintain attention, concentration, and persistence is supported by the claimant's performance on sensorium and cognitive functioning tasks and examinations that demonstrated the claimant presented with sufficient fund of knowledge and language and normal attention span and concentration (Ex. lF/4, 3F/2, 4F/2). Further, the undersigned finds that the claimant's ability to maintain his personal needs, take care of his minor daughter, shop, manage finances, cook, perform household tasks, watch television, use the computer, and participate in recreational activities support Dr. Konieczny's opinion (Ex. 5E/1, 1F/4, 2F/6).

In addition, the undersigned gives little weight to the GAF scores opined by Drs. Konieczny and Faust. These alone are not considered as the basis for a disability determination, but are another factor examined in determining the claimant's functional capacity. However, the undersigned notes that the GAF scores of 48 and 60 are inconsistent with each other (Ex. lF/5, 2F/7). Drs. Konieczny and Faust also based them on single evaluations and do not represent the claimant's baseline functioning throughout the period of review.

(Tr. 224-26) (emphasis added).

The ALJ determined Dees possessed the following RFC:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (20 CFR 416.945) to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform simple, routine tasks in a low stress environment (no fast pace, strict quotas, or frequent duty changes) involving superficial interpersonal interactions with coworkers and supervisors (no

> arbitration, negotiation, or confrontation), no more than very simple reading, writing or mathematics as a job requirement, and no interaction with the general public as a job requirement (20 CFR 416.969a).

(*Id.* at 223.) Absent are the limitations that Dees would require a great deal of supervision and structure to complete job duties accurately due to limited intellectual capacity that the ALJ specifically mentioned in his analysis. (*Id.* at 225.)

While the Commissioner is correct that there is no requirement that the ALJ adopt every proposed limitation in an opinion, the ALJ is required to explain why the limitations were not adopted as the RFC conflicted with them. SSR 96–8p at *7. Further, the ALJ must always build an "accurate and logical bridge" from the evidence to his conclusions. Here, the ALJ failed to include the need for a "great deal of supervision and structure" in the RFC or explain why he did not incorporate those limitations into the RFC. (Tr. at 223-26.) This "failure is all the more glaring given that the ALJ afforded 'great weight'" to Dr. Faust's entire opinion, except for Dr. Faust's determination that Dees would be unable to manage his own funds.[7] *Davidson*, 2018 WL 1453472, at *2. Moreover, the ALJ explicitly mentioned the need for a great deal of supervision and structure opined by Dr. Faust and found his opinion consistent with record as a whole (except for his conclusion that Dees could not manage his own finances)[8] – and then failed to include these limitations in the RFC or explain why he was not including them in the RFC.

---

[7] The fact that the ALJ rejected this portion of Dr. Faust's opinion shows the ALJ knew how to reject a limitation opined by a medical source to the extent he disagreed with such a finding. (Tr. 225.)

[8] *Cf.* the weight the ALJ assigned to Dr. Konieczny's opinion: "The undersigned gives Dr. Konieczny's opinion great weight *to the extent it supports the mental [RFC] set forth in this decision.*" (*Id.* at 226) (emphasis added).

18

Nor does the Commissioner's assertion that the ALJ "was presented with conflicting medical opinions . . . and reasonably determined based on the medical evidence and activities of daily [living] . . . that Plaintiff did not require enhanced supervision" resolve the matter. (Doc. No. 16 at 9) (citations omitted). It is the ALJ's duty to weigh conflicting evidence and resolve the conflict. *Sayles v. Astrue*, No. 1:12CV0446, 2012 WL 5877417, at *8 (N.D. Ohio Nov. 20, 2012) ("The ALJ is charged with a duty to evaluate all of the medical opinions in the record and resolve any conflicts that might appear.") (citing 20 C.F.R. §§ 404.1527 & 416.927). Here, the ALJ assigned great weight (albeit to varying degrees)[9] to *all* the medical opinions in the record. (Tr. 224-26.) While the Court agrees with the Commissioner that the ALJ was presented with conflicting medical opinions as neither the state agency reviewing psychologists nor Dr. Konieczny found Dees required a great deal of supervision and structure as Dr. Faust did, the Court disagrees the ALJ resolved the conflict with respect to those limitations under the circumstances presented here.

"In these circumstances, the ALJ's failure to explain his decision deprived this court of a 'logical bridge between the evidence on the record and his conclusion," *Flesicher v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011), and left the Commissioner, in [his] brief on the merits . . . , to defend the ALJ's decision with impermissible, post-hoc rationalizations, *see S.E.C. v. Chenery*, 332 U.S. 194, 196 (1947)." *Davidson*, 2018 WL 1453472, at *2. Because the ALJ's opinion does not permit the Court to follow the "reasoning and treatment of" opinion evidence in the record, the Commissioner's decision must be vacated and remanded for further proceedings. *Id.* at *2 (quoting *Davis v. Comm'r of Soc. Sec.*, No. 1:16 CV 2446, 2018 WL 137779, at *10 (N.D. Ohio 2018)); *see also Cooper*, 2018 WL 6287996, at *5.

---

[9] *See* n.8, *supra*. The Court notes the ALJ found only Dr. Faust's opinion consistent with the record as a whole. (Tr. 224-26.)

## VII.  CONCLUSION

For the foregoing reasons, the Commissioner's final decision is VACATED AND REMANDED for further consideration consistent with this opinion

**IT IS SO ORDERED.**

Date:  January 6, 2020             *s/ Jonathan Greenberg*
                                    Jonathan D. Greenberg
                                    United States Magistrate Judge